Sarra SHVARTSMAN, et al.,
Plaintiffs–Appellants,

v.

Kenneth S. APFEL, Commissioner of the Social Security Administration, and Daniel R. Glickman, Secretary of the United States Department of Agriculture, Defendants–Appellees.

No. 97–3364.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1997.

Decided March 16, 1998.

John M. Bouman (argued), National Clearinghouse for Legal Services, Inc., Chicago, IL, Linton Joaquin, National Immigration Law Center, Los Angeles, CA, Herb Simmel, National Senior Citizens Law Center, Los Angeles, CA, Sue Augustus, SSI Coalition for a Responisble Safety Net, Chicago, IL, for Plaintiffs–Appellants.

Jacob M. Lewis (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, Thomas P. Walsh, Office of the United States Attorney, Civil Division, Chicago, IL, Mark Stern, Department of Justice, Civil Division, Appellate Section, Washington, DC, for Defendants–Appellees.

Before POSNER, Chief Judge, and
BAUER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, only U.S. citizens are eligible to receive Food Stamps. The plaintiffs in this case are permanent resident aliens who received Food Stamps prior to the statute's effective date and whose applications for U.S. citizenship are pending with the Immigration and Naturalization Service (INS). They argue that the transition procedures implementing the new citizenship requirement violate their due process rights, for INS processes citizenship applications too slowly for them to have a meaningful opportunity to meet the new criterion. The district court denied their claim on summary judgment. The court also denied their request for certification of a nationwide class, deciding instead to certify a class limited to plaintiffs in the Seventh Circuit. We affirm the district court's decisions on these points.

## I.

The Food Stamps program entitles qualified recipients to benefits for a specified period of time, known as a "certification period," which may not exceed 12 months (or 24 months if all the members of the adult members of the household are elderly or disabled). 7 U.S.C. § 2012(c). Benefits terminate automatically at the end of the certification period. *Id.* § 2020(e)(4). As the end of the certification period approaches, recipients may elect to engage in a "recertification process" to establish their continuing eligibility for Food Stamps. The recertification process provides recipients with, among other things, notice of impending termination of benefits, an opportunity to submit all information necessary to determine eligibility, and a face-to-face interview. *Id.* § 2020(e)(4); 7 C.F.R. § 273.14. The process is streamlined to enable Food Stamp recipients who successfully recertify to maintain a continuous flow of benefits from one certification period to the next. 7 C.F.R. § 273.14(d).

Section 402(a)(1) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the Act"), Pub.L. No. 104–193, 110 Stat. 2105, 2262, added for the first time a citizenship requirement to the Food Stamp program's eligibility criteria. 8 U.S.C.

§ 1612(a)(1). The Act also provided transition procedures for applying the new citizenship requirement. *Id.* § 1612(a)(2)(D)(ii)(I)-(III) (as amended by § 510 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009, 3009–673). Under the transition procedures, all recipients whose eligibility could be affected by the new law were required to complete the recertification process, which requires proof of citizenship, between April 1, 1997 and August 22, 1997. Thus, legal aliens who had been receiving Food Stamps were cut off on August 22, 1997 unless they became citizens prior to that date.

The plaintiffs in this class action are impoverished permanent resident aliens who applied for citizenship before August 22, 1997, and who are awaiting resolution of their citizenship applications by INS. INS processes citizenship applications slowly and, the plaintiffs argue, ineptly. In the summary judgment proceedings below, the plaintiffs presented evidence of INS processing delays ranging from several months to over three years. The plaintiffs also presented evidence that INS ultimately approves over 80% of citizenship applications. As a result of INS's long delays in processing applications, the vast majority of which ultimately are approved, the plaintiffs—who claim to meet all the requirements for citizenship—have not been able to become citizens prior to implementation of the new Food Stamps citizenship eligibility requirement.

The plaintiffs filed suit in the district court seeking certification as a nationwide class and alleging that the statutory transition procedure, coupled with INS's delay in processing their citizenship applications, violates their due process rights to a fair opportunity to prove continuing eligibility for food stamps through the statutory recertification procedures. The district court entered summary judgment for the defendants, holding that the plaintiffs failed to show the existence of a protected property interest and that, even if there were a property interest, the legislative process afforded plaintiffs all the process that was due. The district court also declined to certify a nationwide class and in-

stead certified a class limited to plaintiffs residing within the Seventh Circuit.

## II.

■ To prevail on their due process claim, the plaintiffs must first demonstrate that they were deprived of a protected property interest; if they make this showing, then we proceed to determine what process they were due in connection with that deprivation. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982). The plaintiffs argue that they have a property right established by the recertification procedures set forth in the Food Stamp statute and regulations. These procedures, according to the plaintiffs, guarantee recipients a fair opportunity to prove that they continue to meet the program's eligibility requirements, thereby affording them the chance to receive a continuous stream of benefits. For the reasons that follow, we conclude that the plaintiffs' asserted interest is not a property right protected by the Due Process Clause. This purported right is, in reality, a claim of entitlement to a set of procedures that allow a fair opportunity for recertification. Recognition of a property right in the recertification procedures themselves would run afoul of the central distinction in due process jurisprudence between substantive rights and the procedures that must be followed in connection with the deprivation of those rights.

The nature of the plaintiffs' asserted property right requires some explication. The plaintiffs emphasize that they do not claim a property right directly in a continuous stream of benefits, which they concede would be a losing claim given the time-limited nature of the entitlement to Food Stamps. *See Holman v. Block*, 823 F.2d 56, 59 (4th Cir. 1987); *Banks v. Block*, 700 F.2d 292, 296 (6th Cir.) (holding that a household receiving Food Stamp benefits "has no protectable property interest in the continuous entitlement to food stamps beyond the expiration of its certification period"), *cert. denied*, 464 U.S. 934, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983). Rather, the plaintiffs claim a property interest only in the *fair opportunity*—as guaranteed by the Food Stamp recertification procedure—to establish their continuing eligibility for benefits. This distinction is significant, for the purported "fair opportunity" property right will not necessarily result in a continuous stream of benefits for every plaintiff; some plaintiffs will fail to meet the substantive eligibility requirements and will not be recertified even after receiving a fair opportunity to seek recertification.

Thus, the plaintiffs assert a property interest not just in the recertification procedures, but in *meaningful* recertification procedures—that is, recertification procedures that afford them a fair opportunity to prove continuing eligibility. Plaintiffs argue that they were deprived of this property right because the transition procedures implementing the citizenship requirement virtually eliminated any fair opportunity to establish continuing eligibility in time to avoid a break in benefits. According to the plaintiffs, the strict August 22nd deadline, together with INS's alleged ineptitude and delay, converted the recertification process into a sham, for plaintiffs had no chance to become citizens in time to meet the deadline.

The plaintiffs rely on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), as support for their asserted property interest. In *Logan*, the Court found a due process violation when the plaintiff was prevented from using state adjudicatory procedures to redress a claim of discrimination on the basis of handicap. Appellant Logan was a participant in an administrative process established in Illinois that required litigants to bring their discrimination claims before the state Fair Employment Practices Commission. Logan filed a timely complaint with the Commission, but the Commission erroneously held the initial conference between the parties after the 120–day period specified by the statute had lapsed. The Illinois courts determined that the Commission's failure to hold the conference within the mandated period deprived the Commission of jurisdiction over Logan's claim, and the complaint was dismissed. *Id.* at 424–27, 102 S.Ct. at 1151–53.

The Supreme Court held that the dismissal of Logan's complaint violated Logan's due process rights to use the statutorily-mandated procedures for adjudicating his discrimination claim. Following its customary two-pronged due process analysis, the Court first held that Logan had a protectable property

interest in his handicap discrimination claim. *Id.* at 428, 102 S.Ct. at 1153–54 (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). The Court then ruled that the dismissal of Logan's claim as a result of the Commission's procedural error frustrated Logan's due process right "to have the Commission consider the merits of his charge, based upon the substantiality of the evidence, before deciding whether to terminate his claim." *Id.* at 434, 102 S.Ct. at 1156–57.

According to the plaintiffs, *Logan* stands for the proposition that there can be a property right in procedures that allow for a fair opportunity to adjudicate an underlying claim—such as a claim of discrimination, as in *Logan,* or a claim of continued eligibility for benefits, as in the instant case—regardless of whether any property interest attaches to the underlying claim itself. We do not believe that Logan may be read so broadly. *Logan* does refer to the "right to use the FEPA's adjudicatory procedures", *id.* at 429–30, 102 S.Ct. at 1154–55, and the Court drew an analogy between Logan's property interest in his discrimination claim and the "right of access to courts" recognized by the Court in other contexts, *id.* at 430 n. 5, 102 S.Ct. at 1154 n. 5. Contrary to the plaintiffs' contention, however, the reason that there is a right of access to adjudicatory procedures is not because litigants have property interests in the procedures themselves. Rather, access to adjudicatory procedures is important because it serves to protect the litigants' underlying legal claims, which are the true property interests. *Logan* explicitly recognized that legal claims—which, unlike the plaintiffs' asserted property interests in this case, "can be surrendered for value," *id.* at 431, 102 S.Ct. at 1155—are forms of property that fall within the protection of the Due Process Clause. *Id.* at 428, 102 S.Ct. at 1154 ("[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause."); *id.* at 430, 102 S.Ct. at 1155 ("[T]he view that Logan's FEPA claim is a constitutionally protected one follows logically from the Court's more recent cases analyzing the nature of a property interest."). In short, the property interest in *Logan* was the underlying discrimination claim; the ad-

judicatory process constituted the process that was due in connection with the deprivation of that property interest.

Thus, the plaintiffs' reliance on *Logan* gets them no closer to their goal of establishing a property interest in the Food Stamp recertification procedures. This result is unsurprising, for defining access to procedures as a protectable property interest would eliminate the distinction between property and the procedures that are constitutionally required to protect it. The Supreme Court has repeatedly emphasized the importance of this distinction, and the Court has not looked favorably upon claims of a property entitlement to a set of procedures. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) ("[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct."); *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *see also Fleury v. Clayton,* 847 F.2d 1229, 1231 (7th Cir.1988) ("There is neither a 'liberty' nor a 'property' interest in procedures themselves...."); *Szabo Food Serv. v. Canteen Corp.,* 823 F.2d 1073, 1081 (7th Cir.1987) (rejecting a claim to a property interest in the fair application of contract bidding procedures), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988); *Shango v. Jurich,* 681 F.2d 1091, 1101 (7th Cir.1982) (rejecting the view that process is "a substantive end in itself", because "[t]he purpose of a procedural safeguard ... is the protection of a substantive interest to which the individual has a legitimate claim of entitlement").

The problem with the plaintiffs' argument is that, in theory, almost any procedure can be cast in terms of providing a "fair opportunity" to obtain the substantive benefit that might lie at the end of the procedure. That is what procedures are for. To characterize this feature as creating property rights, however, would make the scope of the Due Process Clause virtually boundless. It would

also raise insurmountable practical and conceptual difficulties. As we stated in *Shango* in rejecting a similar claim of a liberty interest in a transfer hearing, "If a right to a hearing is a liberty interest, ... then one has interpreted [due process] to mean that the state may not deprive a person of a hearing without providing him with a hearing. *Reductio ad absurdum*." 681 F.2d at 1101. The plaintiffs would have a stronger argument under *Logan* if they could establish a property entitlement to the Food Stamp benefits themselves; in that case, deprivation of the entitlement without a meaningful, fair opportunity to prove continuing eligibility could indeed violate due process. However, the plaintiffs concede that there is no such property right in continuing benefits, and their attempt to make access to the recertification procedures into a substantive right of its own is unavailing.

We are also unpersuaded by the plaintiffs' reliance on *Youakim v. McDonald*, 71 F.3d 1274 (7th Cir.1995), cert. denied, 518 U.S. 1028, 116 S.Ct. 2571, 135 L.Ed.2d 1087 (1996). Youakim involved the transition procedures for a new Illinois law that required households receiving foster care benefits to become licensed by the state. The plaintiffs in that case argued that the transition procedures violated due process because certain classes of households that had been receiving foster care benefits had no realistic opportunity to become licensed before their benefits were cut off. The state defendants claimed that the plaintiffs' entitlement to foster care benefits terminated when the legislature enacted the new licensing regime. We concluded that the plaintiffs retained a property interest in their benefits even after enactment of the new law, for "[a] state ... may not defend against a due process claim ... by arguing that the plaintiff now lacks a protectable property interest by virtue of the very state action the plaintiff has challenged." *Id.* at 1289. After determining that a property interest was at stake, we then proceeded to consider what process was due. We held that the state violated due process because it did not provide unlicensed households with individualized hearings at which they could demonstrate that they met the new licensing requirements. *Id.* at 1291 ("Although the Illinois General Assembly was

as free as Congress to alter its benefit program by adding a new eligibility requirement, ... the Due Process Clause does not permit the State to withhold benefits without determining whether current recipients can meet the new requirement.").

The plaintiffs argue that *Youakim* controls this case because the transition procedure for implementing the Food Stamp program's citizenship requirement, like the transition procedure in *Youakim*, fails to afford former beneficiaries a meaningful opportunity to establish their continuing eligibility for benefits. The crucial difference between *Youakim* and this case, however, is that the *Youakim* plaintiffs had an undisputed property entitlement to foster care benefits:

> [T]he foster care benefits here are a species of property that is protected under the Constitution, and the State does not seriously contest that conclusion. Entitlements to a broad range of health and welfare benefits have been considered as 'property' under the Due Process Clause. The Director has offered no meaningful distinction between the[se] benefits ... and the foster care benefits that concern us here.

*Id.* at 1288 (citations omitted). Since the foster care benefits were concededly property, the only dispute was whether the plaintiffs' property interest survived the legislative reforms that added the new licensing requirement. Thus, *Youakim* does not help the plaintiffs in this case to establish their property interest in meaningful recertification procedures, for the entitlement in *Youakim* was to substantive benefits, not to a particular set of procedures. *Youakim* may be relevant to the second prong of the plaintiffs' due process argument—the process that is due in connection with the deprivation of property resulting from a legislative change to a benefits program—but it is not relevant to establishing the requisite first prong.

Because the plaintiffs fail to establish a property interest, we conclude that the transition procedures implementing the new citizenship requirement do not violate their due process rights. We therefore affirm the district court's entry of summary judgment for the defendants on the plaintiff's due process claim.

## III.

After rejecting the plaintiffs' due process claim, the district court proceeded to certify a class limited to persons in the Seventh Circuit. The plaintiffs challenge this certification, arguing that they had met all the requirements for certification of a nationwide class.

We review the district court's class certification for an abuse of discretion. *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir.1997). Rule 23(a) of the Federal Rules of Civil Procedure provides for certification of a class when the following conditions are met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The district court addressed the class certification issue only briefly, noting at the outset that it "agrees that the geographic scope of the class should be limited to the Seventh Circuit" because the named plaintiffs all reside there and because the plaintiffs rely "almost exclusively" on *Youakim*. After making this statement, the district court proceeded to conclude that "[p]laintiffs satisfy the other requisites of class certification under 23(a) and (b)(2)."

The plaintiffs argue that the district court's determination that they met all the requirements of Rule 23(a) requires certification of a nationwide class. However, we read the district court's decision differently. The district court first concluded that the geographic scope of the class should be narrowed; only then did it state that the plaintiffs had met the requirements of Rule 23. We infer from this that when the district court considered the Rule 23 factors, it was addressing the geographically-limited class, not the nationwide class sought by the plaintiffs. Thus, although the district court's statement of reasons could be more robust, we do not find a contradiction in its reasoning.

In light of the district court's justifications for limiting the class to plaintiffs residing in the Seventh Circuit, it appears that the district court did not believe that a nationwide class would present common questions of law or that the claims or defenses of the representative parties would be typical of the claims of the class, as required by Rule 23. The district court evidently reached this conclusion because of the plaintiffs' heavy reliance on Seventh Circuit precedent, particularly *Youakim*. Given the fact that all the named plaintiffs reside in the Seventh Circuit, the range in INS processing delays across different geographic regions, and the plaintiffs' reliance on Seventh Circuit case law, we believe that the district court's certification of a geographically limited class was within its discretion, particularly given the Supreme Court's admonition that certification of a nationwide class may "have a detrimental effect by foreclosing adjudication by a number of different courts and judges, and of increasing, in certain cases, the pressures on [the Supreme Court's] docket." *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979); *see also United States v. Mendoza*, 464 U.S. 154, 160, 104 S.Ct. 568, 572, 78 L.Ed.2d 379 (1984).

We therefore affirm the decision of the district court.