Stacey A. WILLIAMS, et al., on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

GENERAL ELECTRIC CAPITAL AUTO LEASE, INC., et al., Defendants–Appellees.

No. 97–1321.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1997.

Decided Oct. 2, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 27, 1998.

O. Randolph Bragg, Horwitz, Horwitz & Associates, Daniel A. Edelman, Cathleen M. Combs, Michelle A. Weinberg, Tara L. Goodwin, James O. Latturner, Edelman & Combs, J. Eric VanderArend, Gessler, Hughes & Socol, Chicago, IL, for Plaintiffs.

David B. Johnson (argued), Theodore R. Scarborough, Jr., Robert E. Easton, Sidley & Austin, George A. Platz, Jordan R. Schau, Lovell, White & Durrant, Chicago, IL, for Defendant–Appellee.

Alexander T. Moore, Chicago, IL, Lewis S. Sandler, Kaufman, Malchman & Kirby, New York, NY, Edward T. Joyce (argued), Arthur W. Aufmann, Joyce & Associates, Chicago, IL, Leslie Blackner, Jacksonville, FL, for Appellants.

Before BAUER, RIPPLE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Because class actions are brought in the names of only a few representative plaintiffs on behalf of a larger defined group, it happens from time to time that duplicate or overlapping class actions are filed. When this occurs, it normally is necessary to decide which lawsuit (if any) definitively resolves a matter between particular parties. That is the principal issue before us in this case, a class action challenging certain provisions in automobile leases issued by General Electric Capital Auto Lease, Inc. (GECAL) under the Consumer Leasing Act (CLA), 15 U.S.C. § 1667 *et seq.* and various Illinois statutes prohibiting unfair and deceptive trade practices. After this case was filed in the Northern District of Illinois in December 1994 at the behest of named representatives Stacey A. Williams and others, the named parties to the lawsuit consented to proceeding before a magistrate judge under 28 U.S.C. § 636(c). The court eventually certified a nationwide class, and the case was resolved when the district court approved a settlement ("the *Williams* suit"). Later, Gwynne Dooner and others filed essentially the same suit as a new class action against GECAL in the Middle District of Florida ("the *Dooner* suit"). GECAL responded (among other ways) by filing a motion in the Northern District of Illinois to enjoin further prosecution of the *Dooner* suit. Still acting for the district court, the magistrate judge (who has since been appointed to the United States Bankruptcy Court) granted the injunction. The *Dooner* plaintiffs have appealed from that order. Before we discuss either the facts or the law relevant to that appeal, however, we must discuss two issues related to our appellate jurisdiction. *Steel Co. v. Citizens for a Better Environment,* —— U.S. ——, ——, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998).

## I

We first explore the question whether the fact that this case was adjudicated by a magistrate judge, acting pursuant to the consent of the named class representatives, has any effect on the binding effect of the judgment on unnamed class members. Article III, § 1 of the Constitution creates a personal right in litigants to have their cases heard before an adjudicator whose independence and impartiality is guaranteed by virtue of being cloaked with certain constitutional protections. See *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 847–49, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); *Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc.,* 53 F.3d 851, 852 (7th Cir.1995). Although magistrate judges do not enjoy the structural Article III protections of lifetime tenure or a constitutional guarantee against salary reductions, *cf.* 28 U.S.C. § 631, they are nevertheless permitted to decide civil cases. *Coreq, Inc.,* 53 F.3d at 852; 28 U.S.C. § 636(c)(1). The unanimous and voluntary consent of the parties is the constitutional "linchpin" of this power. *Adams v. Heckler,* 794 F.2d 303, 307 (7th Cir.1986). This means that parties added to a case after the original litigants have filed a consent under § 636(c) must also agree to the submission of the case to the magistrate judge; if they do not, then the case must be returned to a district judge.

*Coreq., Inc.*, 53 F.3d at 852. See, *e.g.*, *Mark I, Inc. v. Gruber,* 38 F.3d 369 (7th Cir.1994) (new defendants added); *Jaliwala v. United States,* 945 F.2d 221, 223–24 (7th Cir.1991) (intervenor).

If, therefore, unnamed members of a class stood in the same position as new "parties" to the suit, it would be clear that they could not be bound by a magistrate judge's adjudication unless they expressly consented to the magistrate judge's exercise of authority. From a practical standpoint, such a rule would virtually eliminate § 636(c) referrals to magistrate judges in all potential class actions, because it would *de facto* transform all such cases into "opt-in" style actions and fundamentally change the capacity of the judgment (whether the result of full-blown litigation or settlement) to bind both sides in the absence of express consents. This radical result would follow, however, only if unnamed members of a class are properly considered as additional "parties" to the suit. If, instead, they are more accurately regarded as having something less than full party status, the need for their express consent also changes. This is because, not surprisingly, the lack of consent of someone who is not a party to an action does not deprive the magistrate judge of jurisdiction. See, *e.g.*, *United States v. Real Property,* 135 F.3d 1312, 1317 (9th Cir.1998) (record owner of real property that was subject of *in rem* forfeiture proceeding); *Neals v. Norwood,* 59 F.3d 530, 532 (5th Cir.1995) (unserved defendant); *EEOC v. West Louisiana Health Svcs., Inc.,* 959 F.2d 1277, 1279–80 (5th Cir. 1992) (consolidated suit against single defendant where one plaintiff did not consent but consolidated cases still retained individual identities); *Giove v. Stanko,* 882 F.2d 1316, 1318 (8th Cir.1989) (non-intervening judgment debtor who was not automatically a necessary party to a garnishment proceeding). See also 28 U.S.C. § 636(c) (requiring "consent of the *parties*") (emphasis added).

 Generally speaking, absent class members are not "parties" before the court in the sense of being able to direct the litigation. See, *e.g.*, *In re Brand Name Prescription Drugs Antitrust Litig.*, 115 F.3d 456, 458 (7th Cir.1997) (no right to appeal absent intervention); *Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348, 1351–52 (7th Cir.1996) (Easterbrook, J.) (dissent from denial of rehearing *en banc*). See generally 3 Herbert Newberg & Albert Conte, Newberg on Class Actions § 16.01 (3d ed.1992) (listing situations in which courts have treated absent class members as "parties" and "nonparties"). Instead, the named representative—in this case Stacey Williams—is the "party" to the lawsuit who acts on behalf of the entire class, including with regard to the decision to proceed before a magistrate judge. This is an inherent part of representational litigation. See generally Diane P. Wood, "Adjudicatory Jurisdiction and Class Actions," 62 Indiana L.J. 597 (1987). An unnamed class member who prefers an Article III forum has two options. First, she may apply to the district court to intervene under Rule 24(a), become a party to the lawsuit, and then exercise her right to withhold her consent to proceed before the magistrate. Or, after the entry of final judgment, the unnamed class member can raise a collateral attack based on due process against the named representative's decision to consent under § 636(c). In both cases, the key question is the same: Is (or was) the decision to consent made by a party who adequately represents (or represented) the absentee's interests? (We assume for present purposes that both these options can be exercised before the magistrate judge, if the case is otherwise properly before her. It may also be open to the unnamed class members to present such an argument directly to an Article III judge of the district court; because the record does not indicate that the plaintiffs made any effort to do so here, we offer no definitive view on the matter.) If in the first kind of case the district court concludes that the named representative is not an adequate representative (and that the other requirements of Rule 24 have been met), it should grant the application to intervene. See Fed. R. Civ. P. 24(a). *Cf. United States v. City of Milwaukee,* 144 F.3d 524, 528 (7th Cir.1998). Alternatively, the unnamed class member could try to show in a collateral attack that the decision to proceed before a magistrate judge was a matter on which there was a potential (or, in the light of the

fully developed record, an actual) significant intra-class conflict and that the notice the absentee received was inadequate to inform her of this conflict. *Cf. Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). See also *Pacemaker Diagnostic Clinic of America v. Instromedix, Inc.,* 725 F.2d 537, 545 (9th Cir.1984) (*en banc*) (Kennedy, J.) (one reason district court should consider voiding a reference to a magistrate *sua sponte* is where "rights of numerous parties not present before the court might be affected by the decision"). In this case, the "Notice of Pendency of Class Action, and Notice of Proposed Settlement and Hearing Thereon" that went to the unnamed *Williams* class members clearly indicated that the lawsuit was before "Magistrate Judge Joan H. Lefkow." Due process requires no more. More broadly, we see nothing here that presents an Article III problem with the jurisdiction of the district court to enter the injunction from which the appeal has been taken.

■ One final jurisdictional quirk remains to be considered. The consent form the parties executed on May 9, 1995, contained a section entitled "Election of Appeal to a United States District Court," which both Williams and GECAL also signed. Until very recently, parties who had consented to having their case tried by a magistrate judge had the additional option of electing at that time to take their appeal to the district court; if the parties took that second election, further appeal to the circuit court was available only by way of a petition for leave to appeal. See 28 U.S.C. § 636(c)(4) (1996), deleted by 110 Stat. 3847, 3850 § 207 (Oct. 19, 1996). *Cf.* Fed. R. Civ. P. 74 (1997), abrogated by Supreme Court order, 171 F.R.D. 679, 691–92 (April 11, 1997) (effective Dec. 1, 1997) (abrogating Federal Rule implementing the prior statutory provision). As a result of a 1996 amendment to the statute, this election of appellate forum is no longer available, and appeals from magistrate judge decisions tried by consent follow the same pattern as appeals from judgments of district courts. See 28 U.S.C. § 636(c) (1998); Fed. R. Civ. P. 73(c) (1998). Although Williams made the (c)(4) election to appeal only to the district

court—and as we discussed earlier, by doing so acted on behalf of the absent class members—the *Dooner* plaintiffs appealed the anti-suit injunction against the Florida lawsuit directly to us. Their notice of appeal was filed on February 2, 1997, however, which was after the effective date of the Federal Courts Improvement Act of 1996. Because the change repealing § 636(c)(4) was purely jurisdictional and did not affect "substantive rights," *cf. Landgraf v. USI Film Prods.,* 511 U.S. 244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), we hold that the prior designation of the district court as the appellate forum was superseded retroactively by statute and therefore of no effect. See *Darnell v. Rossen,* 116 F.3d 187, 188 (6th Cir. 1997) (*per curiam*) (same). Accordingly, we conclude that we have jurisdiction over this appeal from the magistrate judge.

## II

To understand the *Dooner* plaintiffs' arguments on appeal, it is necessary to review the substantive claims of the *Williams* action. The *Williams* plaintiffs alleged that GECAL had violated the CLA and state law in several ways. First, they claimed that GECAL had failed adequately to disclose the substantial early termination and default charges in its standard form automobile leases, in violation of 15 U.S.C. § 1667a. See also Regulation M, 12 C.F.R. §§ 213.3, 213.4 (1998). Second, they alleged that the early termination charges under the leases were unreasonable, in violation of 15 U.S.C. § 1667b(b), and that the lessee's right under 15 U.S.C. § 1667b(c) to demand an appraisal of the residual value of the automobile upon early termination was, as a practical matter, unavailable in certain cases. (Specifically, the *Williams* plaintiffs complained that although the lessee had 10 days to obtain an appraisal before early termination, the right of appraisal as a practical matter was illusory for cases in which early termination was triggered by lessee default, since GECAL could unilaterally order early termination upon default and then repossess the car.) No class was certified until a settlement had been prepared and submitted to the court, which occurred in July 1995.

At that time, the court provisionally certified a settlement class described as:

all persons in the United States other than residents of Connecticut who, between January 1, 1987, and July 21, 1995, entered into an automobile lease assigned to General Electric Capital Auto Lease, Inc. ("GECAL") and written on a lease form prepared by GECAL which bears one of the identification numbers [listed in the Settlement Agreement]. . . .

The court certified the class under Fed. R. Civ. P. 23(b)(3), which meant of course that absentee class members had the right to opt out of the settlement. All class members received notice by mail of the proposed settlement, and were given until November 1, 1995, to opt out or to provide notice of their intent to object to the settlement. Approximately 1,300 class members elected to opt out.

The court conducted a fairness hearing on the settlement on November 29, 1995. On January 4, 1996, it entered an order certifying the class as it had provisionally been defined and it approved the settlement. *Williams v. General Electric Capital Auto Lease, Inc.*, No. 94–C–7410, 1995 WL 765266 (N.D.Ill. Dec. 26, 1995) (memorandum decision). Under the agreement, settling class members were entitled to receive either a $50 certificate applicable against any early termination fee, or a $100 certificate applicable against payments on a new auto lease. (One of the objectors at the fairness hearing had labeled this arrangement a "joke," pointing out that his early termination fee was more than $1,000.) The settlement agreement also contained the following language releasing the claims of the class members against GECAL:

The settlement embodied in this Agreement shall apply to all persons in the Class as defined in paragraph 3(a) hereof and shall be in complete and final settlement of all claims asserted in the Actions, and all claims which might have been asserted in the Actions, on behalf of the plaintiffs and the Class against GECAL, its successors and assigns, . . . arising out of disclosures made on or in connection with vehicle leases assigned to GECAL, out of the reasonableness or validity of the charges and other terms contained in such leases, and out of the collection or attempted collection of charges imposed under such lease forms, except those claims excluded in paragraph 2(h) hereof.

(The excluded claims referred to those based on representations other than the written terms of the lease, vehicle defect claims, property damage or personal injury claims, and repossession or collection claims not based on the lease. They are not at issue here.) The court's final judgment roughly tracked this language and ordered that all claims asserted in the action and all claims that might have been asserted in it were dismissed with prejudice (with a similar set of exceptions). The January 4, 1996, final judgment also enjoined all "[c]lass members who did not opt out of the class . . . from commencing, prosecuting, or asserting by way of counterclaim or defense against GECAL any of the claims dismissed, settled or barred pursuant to this order."

Given that language, one might wonder under what theory the *Dooner* plaintiffs began their class action in Florida on July 9, 1996, since they had each signed their GECAL lease between January 1, 1987, and July 21, 1995, and thus fell within the description of the class that the *Williams* court had used. Also, even though they apparently received the required notices about the class, none of them had opted out of the *Williams* litigation. What distinguished the *Dooner* plaintiffs was that as of July 21, 1995, the date the court provisionally approved the class certification and settlement, none of the members of the *Dooner* class had yet terminated their leases early or been assessed penalties. (This statement is an accurate description for the named representatives Suzanne and James Harper, Lisa and John Ward, and Dudley Williams—no relation to Stacey Williams of the *Williams* class—who each paid anywhere from $1,237 to $9,728 in early termination charges only after the *Williams* settlement. Gwynne Dooner herself, however, appears to be an improper plaintiff despite being the eponymic class representative. Although she claimed in her appellate brief that she was not notified by

GECAL until August 1995, her story was otherwise when the Florida litigation began. Paragraph 29 of the amended Florida complaint asserts that "[o]n July 5, 1995, Dooner terminated the lease agreement and was assessed early termination charges." Based on this factual admission, Dooner is identically situated to the *Williams* settlement class. This utterly undercuts her individual claim because, as of July 21, 1995 (the date the settlement was entered), she had already terminated her lease and she thus clearly fell within the class she claims *Williams* reached. Yet in both its briefs in this court and below, Dooner's attorney has ignored the face of the Florida complaint and argued that Gwynne Dooner's "lease was terminated after the class period closed." Strangely, GECAL's attorney did not notice the defect. For the sake of consistency with the district court's language, we will continue to refer to the class representatives here as the *"Dooner"* plaintiffs, but the reader should bear in mind that the defect we have noted means that Gwynne Dooner herself is not one of them.)

In September 1996, GECAL moved in the Northern District of Illinois for an order enforcing the final judgment in *Williams* and enjoining the Florida action. The named *Dooner* plaintiffs appeared through their attorney to contest GECAL's motion. They argued that because their leases had not been terminated by July 21, 1995 (the date specified in the order certifying the class), their claims against GECAL had not been justiciable at the time the *Williams* settlement was approved. Accordingly, they reasoned, any effort to include them in the *Williams* class or to bind them to the *Williams* settlement was a nullity. Alternatively, conceding that they received the opt-out notice, the plaintiffs also argued that: (1) the opt-out provided was illusory as to them, and thus inconsistent with due process, since as holders of unterminated leases "they had no knowledge of an early termination claim against GECAL ... much less the value of the claim, or whether they wished to release such a claim"; and (2) they were inadequately represented by the named *Williams* plaintiffs because of a vague intra-class conflict. The district court rejected their justiciability arguments and entered GECAL's requested injunction without expressly entertaining the *Dooner* plaintiffs' collateral attack on the *Williams* settlement. The *Dooner* plaintiffs have now brought their appeal to us.

### III

■■ In order to resolve the appellants' justiciability argument, we must answer several questions: first, were the *Dooner* plaintiffs included within the class certified in *Williams*; second, did they have any claim before the court that was justiciable at that time; and third, was the *Williams* court empowered to enter an order affecting any future claims of the members of the *Dooner* class that would not have been ripe for adjudication at the time the *Williams* order was entered. These are all legal questions, for which our review is *de novo*. Compare *In re American Continental Corp./Lincoln Savings & Loan Securities Litig.*, 49 F.3d 541, 543 (9th Cir.1995) (district court's construction of class definition language, like its construction of a statute or a contract, is reviewed *de novo*) with *Shvartsman v. Apfel*, 138 F.3d 1196, 1201 (7th Cir.1998) (district court's decision to certify a class is reviewed for an abuse of discretion). See also *Sierra Club v. Marita*, 46 F.3d 606, 610–11 (7th Cir.1995) (justiciability reviewed *de novo*). Only if the answer to all three of those questions is yes may we consider the district court's anti-suit injunction, which we would review under the abuse of discretion standard.

■ As far as the record shows, each of the appellants before us falls squarely within the class certified in *Williams*, which included individuals (other than Connecticut residents) who between January 1, 1987, and July 21, 1995, entered into a standard automobile lease prepared by, and assigned to, GECAL. It is also uncontested that none of the *Dooner* plaintiffs exercised his or her right to opt out of the *Williams* litigation. They do not argue that the notice they received was formally insufficient under Fed. R. Civ. P. 23(c)(2), and such an argument would be quite hard to sustain in any event given that some 1,300 people did opt out. We consider below, however, the *Dooner*

plaintiffs' argument that the notice was "constitutionally" insufficient because a person who had not yet terminated the lease and been assessed a penalty would not know whether she had an early termination claim against GECAL and if she should pursue such a claim personally or through the class. For present purposes, it is enough to observe that the *Dooner* plaintiffs fell within the class description used in *Williams*.

A somewhat more difficult question is whether the *Dooner* plaintiffs had any claims that were presently justiciable at the time of the *Williams* litigation, settlement, and judgment. Returning to the *Williams* complaint, recall that there were two theories raised under federal law: (1) the claim that GECAL had failed to disclose, in an understandable manner, the substantial early termination and default charges in its standard form automobile leases; and (2) the substantive claims that the early termination charges under the leases were unreasonable and that the appraisal right under the lease was illusory. We agree with the *Dooner* plaintiffs that there are legitimate questions about the ripeness of the second type of claim in their cases. None of the *Dooner* plaintiffs had tried to terminate a lease, and so it might have been unclear how the appraisal procedures would have worked for them, or whether the amount of the early termination charge would have been reasonable. These claims arguably never actually arose and thus, as of the time of the *Williams* settlement, were only hypothetically available. *Cf. Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir.1994) (some doubt as to whether claim by plaintiff who had not terminated early or even expressed a desire to do so would be justiciable).

■ If that were all we had, then the twin problems of standing and justiciability of future claims with which other courts have grappled might be squarely presented. See, *e.g., Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 635–38 (3d Cir.1996) (Wellford, J., concurring) (arguing that claims brought by exposure-only asbestos plaintiffs are non-justiciable for lack of case or controversy), *aff'd. sub nom., Amchem Prod., Inc. v. Windsor,* — U.S. —, —, 117 S.Ct. 2231, 2244, 138

L.Ed.2d 689 (1997) (recognizing, but declining to reach, the justiciability question); *In re Asbestos Litig.*, 90 F.3d 963, 1015–26 (5th Cir.1996) (Smith, J., dissenting), majority opinion vacated for consideration in light of *Amchem, Flanagan v. Ahearn,* — U.S. —, 117 S.Ct. 2503, 138 L.Ed.2d 1008 (1997), *aff'd. on remand,* 134 F.3d 668 (5th Cir.1998). *(per curiam), cert. granted sub nom., Ortiz v. Fibreboard Corp.,* — U.S. —, 118 S.Ct. 2339, 141 L.Ed.2d 711 (1998). See generally John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action*, 95 Colum. L.Rev. 1343, 1422–33 (1995); Note, *And Justiciability for All?: Future Injury Plaintiffs and the Separation of Powers*, 109 Harv. L.Rev. 1066 (1996). Our case differs from the problems those courts discussed, however, because it is clear that the *Dooner* plaintiffs had at least one presently justiciable claim at the time of the *Williams* settlement: their claim that the disclosure provisions in the leases violated the CLA. See *Highsmith,* 18 F.3d at 438–40 (reaching the merits of a CLA disclosure claim even though the plaintiff had not actually terminated his lease early). That claim, as even counsel for the *Dooner* plaintiffs admits, was properly before the Northern District of Illinois in *Williams* and was subject to resolution in the settlement. We can therefore narrow the issue before us to whether any injunction against the *Dooner* plaintiffs' Florida litigation could reach only their disclosure claims, or whether the Illinois court could properly enjoin the entire Florida suit.

In our view, the court not only could address the entire suit, but this was the appropriate step for it to take. This conclusion follows from the law relating to releases of claims. As the Ninth Circuit wrote in an opinion addressing the massive class action settlement of the claims arising from the bond defaults of the Washington Public Power Supply System:

> [t]he weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim "based on the identical factual predicate as that underlying the claims in the settled class action even though the claim

was not presented *and might not have been presentable in the class action."* *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1287 (9th Cir.1992) (emphasis in original), quoting *TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 460 (2d Cir.1982). Admittedly, both the WPPSS case and *TBK Partners* involved class settlements in federal court releasing state law claims that might not have been cognizable in federal court—as opposed to the release of claims that were non-justiciable in the "case or controversy" sense. However, because the logic of both cases has been subsequently applied to situations where *state* court class settlements released claims of exclusive *federal* subject matter jurisdiction, see, *e.g., Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 116 S.Ct. 873, 879, 881–82, 134 L.Ed.2d 6 (1996); *Grimes v. Vitalink Communications Corp.,* 17 F.3d 1553, 1563–64 (3d Cir.1994); *Nottingham Partners v. Trans–Lux Corp.,* 925 F.2d 29, 34 (1st Cir.1991) (all three cases citing *TBK Partners* with approval), it seems reasonable to read the WPPSS and *TBK Partners* cases as pertaining broadly to the law of "releases" rather than narrowly to the issue of federal court jurisdiction. We also note, in this connection, that nothing in the Supreme Court's *Amchem* decision suggested that the federal courts lacked the Article III *power* to settle future claims of class members. Instead, the Court simply did not reach the Article III justiciability issues because it found that the question whether the settlement class should have been certified was "logically antecedent" to the existence of the Article III issues. See *Amchem,* 117 S.Ct. at 2244.

Here, the substantive claims of the *Dooner* plaintiffs are based on the identical factual predicate (the leases and the potential for an early termination penalty) as the disclosure claims that we have noted were properly before the *Williams* court. It is possible that the appraisal procedure and the computation of the early termination payments might be ministerial at any given point in time. If that were true, then the *Dooner* plaintiffs perhaps could have assessed their potential liability for early termination even at the time of the *Williams* settlement; at a minimum, the range of statutory damages

available to individual plaintiffs should have been clear. See 15 U.S.C. § 1640(a)(2)(A). We need express no opinion on these questions, however, because even if the claims were not ripe, they were closely enough related to the disclosure claims that everything could be resolved in the settlement. It is not at all uncommon for settlements to include a global release of all claims past, present, and future, that the parties might have brought against each other. See, *e.g., Fair v. International Flavors & Fragrances, Inc.,* 905 F.2d 1114, 1115–16 (7th Cir.1990) (even though one claim was technically "nonexistent" at the time of settlement, the parties' general release was enforceable because circumstances showed that employee releasing her claims had known of, and intentionally resolved, the potential dispute that might have existed), as clarified by, *Lynn v. CSX Transp., Inc.,* 84 F.3d 970, 975–77 (7th Cir. 1996). That is all that was done here.

■ Finally, we turn to the plaintiffs' due process attack on the adequacy of representation and opt-out notice in the *Williams* certification. The plaintiffs' claim regarding adequacy of representation, which appeared in their brief in a solitary footnote, is insufficiently developed on appeal and is therefore waived. See *Otto v. Variable Annuity Life Ins. Co.,* 134 F.3d 841, 854–55 (7th Cir.1998). The plaintiffs' second argument—that their opt-out rights were illusory since as holders of unterminated leases they lacked knowledge of what claims they held against GE-CAL and the value of those claims—merits scarcely more discussion. Although the court below did not expressly rule on the plaintiffs' due process collateral attack on certification, a close reading of the opinion indicates that it did so implicitly when it found that:

> The [*Dooner*] ... plaintiffs had the necessary incentive to read the notice of proposed settlement [in *Williams*] carefully. The [*Dooner*] plaintiffs were notified of the terms of the settlement and of the fairness hearing. Further, they were adequately equipped to make a reasoned decision, based on the likelihood of early termination and the costs/benefits of a separate legal challenge, regarding the relative mer-

its of participating in the class or opting out.

Similarly, in its memorandum decision after the fairness hearing approving the settlement, the district court rejected exactly the same due process claim the *Dooner* plaintiffs now seek to raise, when it was not persuaded by objector Steven Lawson's argument that "the notice did not provide information on what early termination charges customarily amount to or how they are determined so as to assist a provisional class member in deciding whether to ... opt out." Thus, in the end, the plaintiffs' due process attack on certification is little more than a gussied up version of their justiciability argument, and it fails for the same reason: all of the *Dooner* plaintiffs had a cognizable disclosure claim at the time of the *Williams* settlement that placed them on inquiry notice about the entire settlement.

With no justiciability or due process bars standing in its way, the district court did not abuse its discretion in entering an injunction against the Florida litigation. Indeed, it is hard to see how anything less than a comprehensive injunction could have protected the Illinois settlement. No one can say for sure what the settlement would have looked like if GECAL had thought that it was really resolving only the disclosure claims and leaving open a large number of substantive claims, but it is safe to say it probably would have been different. The *Dooner* plaintiffs did not sign their leases after the closing date for the *Williams* class, and thus they cannot avoid class membership that way. Had they wished to take a wait-and-see approach to their individual claims, they could have objected or opted out of the class along with the 1,300 others who took that approach. They did not, and the lower court was therefore well within its authority to prohibit them from re-litigating their claims in another forum. We therefore AFFIRM the district court's injunction.