*1312 PRYOR, Circuit Judge:
This appeal requires that we resolve two main issues: first, whether a magistrate judge had subject-matter jurisdiction to enter a final judgment in a class action without first obtaining the consent of the absent members of the class; and second, whether a judge abused his discretion when he found that seven defendants would be financially unable to satisfy a judgment even though no evidence about the financial position of six of the defendants had been introduced. Miranda Day sued several debt management businesses and individual employees of those businesses on behalf of herself and a statewide class of about 10,000 consumers. Day and the defendants consented to allow a magistrate judge to enter a final judgment in the class action. 28 U.S.C. § 636(c). Day and the defendants then informed the magistrate judge that they had reached a settlement agreement, which expanded the definition of the class to a nationwide class of 125,000 consumers and released most of the claims of that class in exchange for no monetary relief for the absent class members. At a fairness hearing on the settlement agreement, Day and the defendants argued that the defendants would be financially unable to satisfy a judgment, but the evidence in the record supported the conclusion that only one of the defendants, Persels & Associates, LLC, would be financially unable to satisfy a significant judgment. The magistrate judge concluded that the settlement agreement was fair, adequate, and reasonable even though it did not provide any monetary relief to the absent class members because the defendants would be unable to satisfy a significant judgment. We conclude that the magistrate judge had subject-matter jurisdiction to enter a final judgment because absent class members are not parties whose consent is required for a magistrate judge to enter a final judgment under section 636(c). But we vacate that judgment because the magistrate judge abused his discretion when he found, without adequate eviden-tiary support, that the defendants could not satisfy a significant judgment, and we remand for further proceedings.
I. BACKGROUND
CareOne Services, Inc., offered credit counseling services that purported to allow debtors to lower their payments and pay off their debts. In November 2007, Miranda Day enrolled in CareOne’s credit counseling services. As part of that arrangement with CareOne, Day received and entered a retainer agreement with Ruther & Associates, LLC, a law firm managed by Neil J. Ruther, and with Car-eOne for debt resolution services. Under the agreement, Day would make monthly payments to Ruther & Associates and Car-eOne instead of paying her creditors. Ruther & Associates and CareOne would accumulate these funds in an escrow account. Ruther & Associates and CareOne would then negotiate on behalf of Day with her creditors to settle her debt with payments from the escrow account. The agreement also provided that Ruther & Associates and CareOne would deduct a legal fee in the amount of 15 percent of Day’s debt before she entered the agreement from her monthly payments. The agreement provided that the fees could be higher based on the complexity of the representation. When Ruther retired in 2008, he transferred the law firm to Jimmy B. Persels, and Persels renamed the law firm Persels & Associates, LLC. Both law firms employed Robyn R. Freedman, an attorney licensed in Florida, to assist in the credit counseling services, and Freedman was assigned to represent Day.
*1313 Day paid six monthly payments of $212.39 from January to June 2008 for a total payment of $1,274.34. None of the money that Day paid to the law firms was disbursed to her creditors. Instead, the funds paid for fees of the law firms. As a result of nonpayment, one of Day’s creditors sued her on April 17, 2008, and Day tried to contact both CareOne and Ruther & Associates immediately after being served. In response to her inquiries, Day received an email from Freedman on April 21, 2008, that told her that Freedman had reviewed her file and would be working with the paralegal negotiators at CareOne to resolve her disputes with her creditors. Day received no further assistance from CareOne or any of the ■ attorneys or law firms, and a default judgment was entered against her on July 10, 2008. After the court entered a default judgment, Day received a form answer to the complaint of her creditor that stated that it had been prepared by or with the assistance of Legal Advice Line, LLC.
In July 2008, another creditor sued Day. She again tried to contact CareOne, the law firms, and Freedman. A CareOne representative assured Day that CareOne would take care of the matter, but Car-eOne, Freedman, and the law firms failed to assist Day in that matter. Day filed for bankruptcy on July 15, 2008.
Day sued CareOne, Persels & Associates, Ruther & Associates, Persels, Ruth-er, Freedman, several companies that had provided debt settlement services but not legal representation to her, and one individual, who had provided debt settlement services to her. Day sued on behalf of herself and a class of 10,000 similarly situated residents of Florida who had sought credit counseling services from CareOne. Fed.R.Civ.P. 23(b)(3). In her complaint, Day alleged that the debt management defendants were liable to her and the class under the Florida Deceptive and Unfair Trade Practices Act, the Credit Repair Organizations Act, and based on several causes of action under common law. The defendants who did not provide legal representation, including CareOne, moved to stay the action against them and compel arbitration. The district court granted the motion to compel arbitration and stayed the action against all of those defendants except CareOne. The district court concluded that any claims against CareOne that arose from the retainer agreement could not be stayed because that agreement did not include an arbitration provision. Day and the legal service defendants, including CareOne, then consented to have a magistrate judge conduct all proceedings and to allow the magistrate judge to enter a final judgment.’ See 28 U.S.C. § 636(c).
Day filed an amended complaint on behalf of herself and about 10,000 similarly situated Florida residents. Fed.R.Civ.P. 23(b)(3). The amended complaint added Legal Advice Line as a defendant. In her amended complaint, Day alleged that the legal service defendants were liable to her and the class under the Credit Repair Organizations Act and several causes of action under common law.
Eighteen days after Day filed the amended complaint, Day and the legal services defendants, including Legal Advice Line, notified the court that they had reached an agreement, in principle on the resolution of the case and that they intended to enter a final settlement agreement in about 60 days. Day and the legal services defendants then entered a settlement agreement. The settlement agreement defined the class as all persons in the United States who had entered agreements for legal advice concerning debt with the legal service defendants on or after April 28, 2008, except those consumers who were class members in a class *1314 action pending in the Eastern District of Washington. The class, as defined by the settlement agreement, included over 125,-000 absent members.
The settlement agreement limited the ability of the legal service defendants to collect fees from a client who entered a retainer agreement for debt management services after October 1, 2010. Under the agreement, the legal service defendants could collect fees from one of these clients only after the defendants negotiated a settlement with that client’s creditor. The agreement also required the legal services defendants to modify their retainer agreement to disclose the amount that the client would pay in legal fees and to establish processes to ensure that clients seeking the assistance of an attorney were able to communicate with the attorney within a reasonable time. The agreement included a $100,000 cy pres payment to the American Bar Foundation. The agreement required that the legal services defendants pay the costs of administering the settlement and a $5,000 incentive payment to Day. The agreement also provided that the legal services defendants would pay attorney’s fees up to $300,000 and that the complaint would be dismissed with prejudice. The agreement provided no monetary relief to the absent members, but released any claims that an absent member had against the legal services defendants.
The magistrate judge conditionally certified the class, appointed Day’s counsel as class counsel, scheduled a fairness hearing, approved the notice of proposed class action, and granted preliminary approval to the settlement agreement. The parties sent notice of the class action and the settlement to over 98 percent of the class members and the attorneys general of every state except Washington. The notice informed class members that they could opt out of the class and that, if they opted out of the class, the settlement would not bar them from pursuing their individual claims against the legal service defendants. Three hundred and twenty-five class members opted out of the class.
The notice also informed class members of the procedure to object to the proposed settlement. The notice explained that the final approval hearing would be “before Magistrate Judge Thomas G. Wilson,” but the notice did not inform class members that Day had consented to have the magistrate judge enter a final judgment or provide any other notice that the magistrate judge would enter a final judgment.
Five class members, including Raymond Gunn, and the Attorneys General of Connecticut, Florida, Maine, New York, and West Virginia objected to the settlement agreement. In his objection, Gunn argued that the settlement agreement was not fair, adequate, and reasonable because the class members received no monetary relief in return for an overly broad release of claims that could potentially be valuable, that the cy pres distribution was inappropriate, that the American Bar Foundation was an inappropriate recipient even if a cy pres distribution were warranted, and that the attorney’s fee and incentive payment could not be justified in the light of the result achieved for the class.
During the week before the settlement hearing, Day and the legal services defendants filed separate motions for final approval of the settlement agreement, and the motions explained that the settlement had been revised in response to Gunn’s objections in two ways. First, the revised agreement did not release claims of legal malpractice that were unrelated to the allegations in the complaint. Second, the revised agreement changed the recipient of the cy pres payment from the American Bar Foundation to two organizations with purposes more closely aligned with the *1315 members of the class. Day’s motion for approval stated that information provided during informal discovery established that the defendants would be unable to pay a substantial settlement or judgment.
At the fairness hearing, class counsel argued that the settlement should be approved because it held the defendants accountable for their actions and no objector had offered a better solution. Class counsel also asserted that few of the class members had objected or chosen to be excluded from the class and that it was uncertain if any judgment could be collected. When the district court asked class counsel what inquiry he made into collecta-bility, class counsel responded that he had inquired about collectability and relied on the response of the legal service defendants. Counsel for Persels & Associates also stated that the recoveiy of a judgment was doubtful because Persels & Associates had suffered net losses for two years and owed $14 million on a separate settlement agreement. Counsel for CareOne asserted that, if the matter was not settled, adjudication against CareOne would be delayed because it intended to appeal the denial of the motion to compel arbitration.
Gunn argued that the court should not approve the settlement. Gunn argued that the settlement agreement required class members to relinquish valuable rights for no monetaiy compensation. He also argued that the injunctive relief failed to compensate the class because it required only that the legal service defendants comply with federal regulations.
After the hearing, the managing member of Persels & Associates, Ruther, filed a declaration about the financial condition of Persels & Associates. Ruther averred that Persels & Associates had sustained a net loss of $5,857,269 during the calendar years of 2010 and 2011. Ruther also averred that Persel & Associates had entered a settlement agreement in another matter in which it was required to pay $18 million and that Persels & Associates still owed $14 million under that agreement. Ruther averred that the amount owed under that agreement was secured by all assets of the firm. Ruther also averred that CareOne had modified software at his request and that he had been told that the cost of this modification exceeded $350,000. Ruther’s declaration included no additional information about the financial condition of any defendant, but Ruther had averred, in a previous declaration, that, “[t]o the best of [his] knowledge, understanding and belief,” Ruther, Persels, and Freedman would be unable to satisfy a judgment because they “are married and [their] assets are held jointly with their spouses and are therefore protected from levy or execution.”
The magistrate judge certified the class and approved the settlement agreement. The magistrate judge explained that, although the settlement agreement provided no monetary relief, the agreement was fair, adequate, and reasonable because of “(1) the ability of the Class members to opt out of the settlement agreement; (2) the financial inability of the defendants to pay a meaningful award, much less to respond to a large judgment; and (3) my complete confidence in the ability and integrity of ... counsel....”
The magistrate judge then applied the following six factors to determine whether the settlement was fair, adequate, and reasonable:
(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the *1316 stage of proceedings at which the settlement is achieved.
The magistrate judge stated that “recovery is not certain even if the Class is successful at trial, since they may not be able to collect on the judgment” because “the law firm defendants [are] facing financial hardship.” The magistrate judge then stated that the settlement agreement was fair because “the likelihood of the Class succeeding on the merits is far from clear.” The magistrate judge explained that the “range of actual recovery” was “from zero to a minimal recovery” because the class members would not be able to collect a significant judgment, which supported the conclusion that “the point at which the settlement is fair, reasonable, and adequate includes no monetary recovery by the Class members.” The magistrate judge also concluded that the likely complexity and expense of further litigation supported the approval of the agreement, that the substance and amount of opposition “d[id] not warrant disapproval” of the agreement, and that the stage of proceedings at which the settlement had been achieved supported the approval of the agreement. The magistrate judge certified the class, awarded class counsel $300,000, and awarded Day $5,000.
II. STANDARDS OF REVIEW
This appeal is governed by two standards of review. We review our subject matter jurisdiction de novo. Belleri v. United States, 712 F.3d 543, 547 (11th Cir.2013). We review the approval of a settlement in a class action for abuse of discretion. Faught v. Am. Home Shield Corp., 668 F.3d 1233, 1239 (11th Cir.2011).
III. DISCUSSION
We divide our discussion in two parts. First, we explain that the magistrate judge had subject-matter jurisdiction to enter a final judgment. Second, we explain that the magistrate judge abused his discretion when he found that the legal service defendants were financially unable to satisfy a significant judgment.

A. The Magistrate Judge Had Subject-Matter Jurisdiction to Enter a Final Judgment.

We divide our discussion of our jurisdiction in two parts. First, we explain that the magistrate judge had statutory jurisdiction to enter a final judgment. Second, we explain that the magistrate judge had constitutional jurisdiction to enter the judgment.
1. The Magistrate Judge Had Jurisdiction, Under the Federal Magistrates Act, to Enter a Final Judgment.
The Federal Magistrates Act provides that, “[u]pon the consent of the parties,” a magistrate judge “may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.” 28 U.S.C. § 636(c)(1). After the magistrate judge enters a final judgment, “an aggrieved party may appeal directly to the appropriate United States court of appeals.” 28 U.S.C. § 636(c)(3). The National Association of Consumer Advocates, as amicus curiae, argues that the magistrate judge lacked jurisdiction because the absent class members are parties under section 636(c)(1) and never consented to the entry of a final judgment by a magistrate judge, but we disagree.
We conclude, as have the Third and Seventh Circuits, that absent class members are not “parties” whose consent is required for a magistrate judge to enter a final judgment under section 636(c). See Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 181 (3d Cir.2012); Williams v. Gen. Elec. Capital Auto Lease, Inc., 159 F.3d 266, 269 (7th Cir.1998); see also, Wil *1317 liam B. Rubenstein, et al., Newberg on Class Actions § 1:1 (“Class actions are a form of representative litigation. One or more class representatives litigate on behalf of those class members, and those class members are bound by the outcome of the representative’s litigation.”). Our conclusion is supported by the ordinary legal meaning of the term “parties” in 1979, the presumption of consistent usage, and the practical approach to interpreting the term “part/’ adopted by the Supreme Court in Devlin v. Scardelletti, 536 U.S. 1, 7-14, 122 S.Ct. 2005, 2009-13, 153 L.Ed.2d 27 (2002).
When Congress leaves a term in a statute undefined, “we must ‘give it its ordinary meaning,’ keeping in mind the context of the statute.” United States v. Jimenez, 705 F.3d 1305, 1308 (11th Cir.2013) (quoting United States v. Santos, 553 U.S. 507, 511, 128 S.Ct. 2020, 2024, 170 L.Ed.2d 912 (2008)). “And when the law is the subject, ordinary legal meaning is to be expected.... ” Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 73 (2012). To interpret the term “part/’ in context, it “must be given the [ordinary legal] meaning [it] had when the text was adopted.” Id. at 78.
The ordinary legal meaning of the term “party,” when Congress added the relevant language of section 636(c)(1) in 1979, suggests that the term “parties” excludes absent class members. See Federal Magistrate Act of 1979, Pub.L. No. 96-82, § 2, 93 Stat. 643 (1979). This conclusion is supported by the contemporaneous version of Black’s Law Dictionary, the contemporaneous First Restatement of Judgments, the Second Restatement of Judgments published three years after the addition of the relevant language, and a decision of the Supreme Court six years after the amendment to section 636(c)(1).
The fifth edition of Black’s Law Dictionary, published the same year that Congress added the relevant language, explained that “[a] ‘party’ to an action is a person whose name is designated on record as plaintiff or defendant.” Black’s Law Dictionary 1010 (5th ed.1979). Black’s Law Dictionary also made clear that the term “party” “[i]n general, means one having the right to control proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from judgment,” and that “party” “refers to those by or against whom a legal suit is brought.” Id. Absent class members are not designated on record as a plaintiff or defendant. Absent class members also ordinarily lack the power to control proceedings. And a suit is not brought “by or against” absent class members. Instead, the Federal Rules of Civil Procedure provide that “[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members” when the requirements for a class action have been met. Fed.R.Civ.P. 23(a).
The Restatement (First) of Judgments, which was the only version available when Congress added the relevant language, explained that “[a] class action is an illustration of a situation where it is not feasible for all persons whose interests may be affected by an action to be made parties to it.” Restatement (First) of Judgments § 86 cmt. b (1942). And the Restatement (First) made clear that, as the Seventh Circuit has noted, “[generally speaking, absent class members are not ‘parties’ before the court in the sense of being able to direct the litigation,” Williams, 159 F.3d at 269, because “the expense and difficulty of making all pei’sons who have interests in the proceeding parties to it outweigh the normal desirability of not depriving persons of causes of action or of defenses without giving them an opportunity to be heard,” Restatement (First) of Judgments *1318 § 86, cmt. b (1942). In the absence of class members as parties, the class representative, who is a named plaintiff, must “purport to act on behalf of all.” Id.
The Restatement (Second) of Judgments, which was published three years after the relevant portion of section 636(c)(1) was added, adhered as follows to the understanding of the term “party” in a class action that had been expressed in the Restatement (First):
A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is ... [t]he representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member.
Restatement (Second) of Judgments § 41(l)(e) (1982). The Restatement (Second) explained that the class representative had “the requisite authority, and generally the exclusive authority, to participate as a party on behalf of the represented person.” Id. § 41 cmt. a.
And the decision of the Supreme Court in Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), six years after the addition of the relevant portion of section 636(c)(1), also suggests that, at least for purposes of the management of the litigation, an absent class member who has not intervened is not a party. In Shutts, the Supreme Court held that a class representative may choose to file a class action in a jurisdiction that would not otherwise have personal jurisdiction over the absent class member so long as sufficient notice is provided to the absent class members and they are given an opportunity to opt out. Id. at 811-12, 105 S.Ct. at 2974-75. The Court explained that an opt-in procedure, similar to a requirement that each absent class member consent to the entry of a judgment by a magistrate judge, was unnecessary for a state court to exercise personal jurisdiction because a rule “[Requiring a plaintiff to affirmatively request inclusion would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit.” Id. These authorities suggest that Congress excluded absent class members when it used the term “parties” in section 636(c)(1) because the ordinary legal meaning of “parties” excluded absent class members. See also Pearson v. Ecological Sci. Corp., 522 F.2d 171, 176 (5th Cir.1975) (referring to absent class members as “nonparty class members”).
Our reading of the term “parties” in section 636(c)(1) to exclude absent class members is also supported by the “presumption that a given term is used to mean the same thing throughout a statute.” See Barber v. Thomas, 560 U.S. 474, 130 S.Ct. 2499, 2506, 177 L.Ed.2d 1 (2010) (quoting Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 555, 130 L.Ed.2d 462 (1994)). Section 636 uses the word “parties” in several places: subsection (c)(1) requires the “consent of the parties” for the exercise of jurisdiction by a magistrate judge in a civil action; subsection (c)(2) provides that, if a magistrate judge is designated to exercise jurisdiction, “the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction”; subsection (c)(2) also provides that, after the “decision of the parties [has] be[en] communicated to the clerk of court[,] ... the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences”; and subsection (b)(1)(c) states *1319 that a magistrate judge who has been assigned to conduct evidentiary hearings, but not to render a judgment, “shall file his proposed findings and recommendations ... with the court and a copy shall forthwith be mailed to all parties.” 28 U.S.C. § 636(b), (c). If we were to interpret the word “parties” in the consent provision to include absent class members, we would also interpret the word “parties” in the other provisions of section 636 to include absent class members based on the presumption that a word is used consistently throughout a statute. But to apply that broad definition of the word “parties” throughout the statute would greatly increase the costs of class actions and the burdens on the courts. Under subsection (b)(1), the court would be responsible for notifying all absent members of a class of the report and recommendations of a magistrate judge. And if the absent class members consented to adjudication of their claims by a magistrate judge, the clerk of the court would be required, under subsection (c)(2), to notify those absent class members of the availability of a magistrate judge to exercise such jurisdiction. To be sure, subsection (c)(3) instructs that “an aggrieved party may appeal directly to the appropriate United States court of appeals,” id. § 636(c)(3), and the Supreme Court has held that, under its precedents, an absent class member who unsuccessfully objects to a proposed settlement may appeal the approval of that settlement, Devlin, 536 U.S. at 14, 122 S.Ct. at 2012. But the Supreme Court in Devlin did not purport to determine the meaning of the term “party” in any provision of section 636. For the purpose of the consent requirement of section 636(c), absent class members “are more accurately regarded as having something less than full party status.” See Williams, 159 F.3d at 269.
Our decision that absent class members are not “parties” under section 636(c)(1) is also supported by the pragmatic approach to defining the term “party” adopted by the Supreme Court in Devlin. In that decision, the Court explained that, in a class action, “[njonnamed class members ... may be parties for some purposes and not for others,” and “[t]he label ‘party[1] does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context.” Devlin, 536 U.S. at 9-10, 122 S.Ct. at 2010. The Court then explained that absent class members are treated as parties for some purposes “to simplify litigation involving a large number of class members with similar claims.” Id. at 10, 122 S.Ct. at 2010-11. The Court also explained that the rule that absent class members are not parties for the purpose of diversity jurisdiction “is likewise justified by the goals of class action litigation” because “[e]ase of administration of class actions would be compromised by having to consider the citizenship of all class members” and “considering all class members for these purposes would destroy diversity in almost all class actions'.” Id., 122 S.Ct. at 2011.
The purposes of class actions support the exclusion of absent class members from the term “parties” in section 636(c). “From a practical standpoint,” the inclusion of absent class members as parties under section 636(c) “would virtually eliminate § 636(c) referrals to magistrate judges in all potential class actions, because it would de facto transform all such eases into ‘opt-in’ style actions and fundamentally change the capacity of the judgment ... to bind both sides in the absence of express consents.” Williams, 159 F.3d at 269. Such a decision would not serve the “goals of class action litigation” including “simplif[ication] [of] litigation involving a large number of class members with similar claims” and “[e]ase of administration.” Devlin, 536 U.S. at 10, 122 S.Ct. at *1320 2010-11. In the context of personal jurisdiction, the Supreme Court has explained that “[requiring a plaintiff to affirmatively request inclusion would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit.” Shutts, 472 U.S. at 812-13, 105 S.Ct. at 2975. “[T]he benefit offered in return for consent to trial before a magistrate judge is the prospect of an earlier trial or other form of case resolution than could be arrived at by a district judge.” R. Lawrence Dessem, The Role of the Federal Magistrate in Civil Justice Reform, 67 St. John’s L.Rev. 799, 828 (1993). The benefit of an earlier, and potentially less expensive, adjudication is most likely to be substantial when a class action “involv[es] an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit.” Shutts, 472 U.S. at 813, 105 S.Ct. at 2975.
The limitation on the holding in Devlin to “nonnamed class members ... who have objected ... at the fairness hearing,” 536 U.S. at 14, 122 S.Ct. at 2013, also supports the conclusion that, at least when the class members have not participated in proceedings, absent class members are not parties under section 636(c). In Devlin, the Court explained that to refuse to allow a class member who had objected to a settlement at a fairness hearing to appeal the approval of the settlement “would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court.” Id. at 10, 122 S.Ct. at 2011. We have explained, “Devlin held that nonnamed members of class actions who have timely objected to a class settlement may appeal the denial of their objections without first moving to intervene.” AAL High Yield Bond Fund v. Deloitte & Touche LLP, 361 F.3d 1305, 1309 (11th Cir.2004). And our sister circuits agree that Devlin is limited to treating absent class members as parties for the purpose of appeal only when they objected to a settlement approved by the district court. See, e.g., Robert F. Booth Trust v. Crowley, 687 F.3d 314, 319 (7th Cir.2012) (“Devlin holds that a member of a class certified under Rule 23, who asks the district court not to approve a settlement, need not intervene in order to appeal an adverse decision.”); Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1019 (9th Cir.2012) (“In Devlin, the Supreme Court considered whether a non-named, absent class member who objects to a settlement, but who cannot opt out because the class action was certified under Rule 23(b)(1), must intervene to appeal an objection overruled by the district court.”); Abeyta v. City of Albuquerque, 664 F.3d 792, 796 (10th Cir.2011) (“[T]he Devlin exception to the Marino [v. Ortiz, 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988)] rule will only apply where the nonparty has a unique interest in the litigation and becomes involved in the resolution of that interest in a timely fashion both at the district court level and on appeal.”); In re Orthopedic Bone Screw Prods. Liab. Li-tig., 350 F.3d 360, 363 n. 3 (3d Cir.2003) (“Objectors ... do not qualify as a party for purposes of appealing [an] original settlement,” when they “neither objected at the fairness hearing nor appealed the settlement, which is now final.”); In re Gen. Am. Life Ins. Co. Sales Practices Litig., 302 F.3d 799, 800 (8th Cir.2002) (“Devlin concerned the appellate rights of an unnamed class member who challenged the fairness of a settlement in a mandatory class action.”); cf. In re Lupron Mktg. & Sales Practices Litig., 677 F.3d 21, 29-30 (1st Cir.2012) (“The question ... becomes whether Devlin, which created an exception for unnamed class members who have *1321 objected to settlement agreements, extends to this situation in which unnamed class members have objected to a cy pres distribution.”). No circuit court has concluded that Devlin requires a federal court to treat a passive absent class member as a party for any purpose. This reading of Devlin makes sense in the light of the general rule that, when absent class members have not attempted to participate in the litigation, those “absent class members are not ‘parties’ before the court in the sense of being able to direct the litigation.” Williams, 159 F.3d at 269.
The consumer advocates argue that Dev-lin suggests that absent class members are parties under section 636(c) because “without a right to consent individually, absentees are bound to the named plaintiffs relinquishment of their rights to an adjudication before an Article III judge,” but the absent class members in this case were not bound in the same sense that the unnamed class member in Devlin was bound. In Devlin, the Court held “that nonnamed class members ... who have objected in a timely manner to approval of [a] settlement at [a] fairness hearing have the power to bring an appeal without first intervening,” 536 U.S. at 14, 122 S.Ct. at 2013, and explained that “[wjhat is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement,” id. at 10, 122 S.Ct. at 2011. The Court observed that to refuse to allow a class member who had objected to a settlement at a fairness hearing to appeal the approval of the settlement “would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court.” Id. The Court also explained that this result was especially necessary because the “petitioner had no ability to opt out of the settlement.” Id. A holding that the unnamed class member in Devlin could not appeal the approval of a settlement even though he had objected at a fairness hearing “would [have] deprive[d] nonnamed class members of the power to preserve them own interests,” and removed unnamed class members’ “only means of protecting [themselves] from being bound by a disposition of [their] rights.” 536 U.S. at 10-11, 122 S.Ct. at 2011.
Absent class members would not be deprived of the only means to protect their interests in adjudication before an Article III judge if we were to conclude that they are not parties within the meaning of section 636(c). Absent class members would instead retain at least three options to protect their rights to the adjudication of their claims by an Article III judge when a class is certified and the named plaintiff has consented to adjudication by a magistrate judge: (1) as the Seventh Circuit explained in Williams, absent class members could “apply to the district court to intervene under Rule 24(a), become ... parties] to the lawsuit, and then exercise [their] right to withhold [their] consent to proceed before the magistrate judge,” 159 F.3d at 269; (2) unlike the absent class member in Devlin, the absent class members in many class actions, including this one, could opt out of a settlement and not be bound by the judgment entered by a non-Article III judge, see Devlin, 536 U.S. at 10-11, 122 S.Ct. at 2011; and (3) “unnamed class member[s] could try to show in a collateral attack that the decision to proceed before a magistrate judge was a matter on which there was a potential (or, in the light of the fully developed record, an actual) significant intra-class conflict and that the notice the absentee[s] received was inadequate to inform [them] of the conflict,” Williams, 159 F.3d at 269-70. As to the first option, although we have not addressed the question, see Gen. Trading, Inc. v. Yale Materials Handling *1322 Corp., 119 F.3d 1485, 1496 (11th Cir.1997) (“[assuming arguendo that this court would require the consent of latecom-ers____”), the general view of the federal courts is that, “without the consent of ... ‘intervenors’, the magistrate judge’s order has the effect only of a report and recommendation to the district judge, who upon the filing of objections must review de novo the recommendation,” N.Y. Chinese TV Programs, Inc. v. U.E. Enters., 996 F.2d 21, 25 (2d Cir.1993); see also Jaliwa-la v. United States, 945 F.2d 221, 223 (7th Cir.1991) (“Without consent [from interve-nors], the magistrate had no power to enter an appealable final judgment.”); 12 Charles Alan Wright, et al., Federal Practice and Procedure § 3071.2 (2d ed. 1997) (“If consents are not obtained, these added parties, like any others who have not consented, retain the option of nullifying any resulting judgment on the ground that they never consented.”). And the practice in at least some district courts in our Circuit has been for a magistrate judge to draft a report and recommendation for the district court when a motion to intervene is filed because “a motion to intervene is a dispositive motion which must ultimately be decided by an Article III judge in the absence of consent.” Newman v. Sun Capital, Inc., No. 2:09-cv-445, 2010 WL 326069, at *1 (M.D.Fla. Jan. 21, 2010); see also Smith v. Powder Mountain, LLC, Nos. 08-80820-civ, 08-cv-81185, 2010 WL 5483327, at *1 (S.D.Fla. Dec. 8, 2010) (“[T]he motion presently before the Court is a motion to intervene, which, because of its dispositive nature, cannot be decided by a magistrate judge absent the parties’ consent.”).
In contrast with the problem in Devlin, a requirement that the absent class members individually consent to jurisdiction before a magistrate judge is not necessary to preserve absent class members’ “only means of protecting [themselves] from being bound by a disposition of [their] rights [they] find[] unacceptable.” Devlin, 536 U.S. at 10-11, 122 S.Ct. at 2011. As this Court has explained, Devlin applies to “parties who are actually bound by a judgment, not [absent class members] who merely could have been bound by the judgment.” See AAL High Yield Bond Fund, 361 F.3d at 1310; cf. Gautreaux v. Chi. Hous. Auth., 475 F.3d 845, 851 (7th Cir.2007) (“Devlin ... reflects a concern that, without an opportunity to appeal, unnamed class members will have no other recourse than to accept the terms of a settlement and to forfeit further pursuit of their claim.”); P.A.C.E. v. Sch. Dist. of Kan. City, 312 F.3d 341, 343 (8th Cir.2002) (“[P.A.C.E.] relies only on Devlin, which is not on point [in a challenge to the certification of a class] because it involved a final order approving settlement of the case.”). The absent class members could have been bound by the named plaintiffs consent to the jurisdiction of a magistrate judge, but they also could have avoided that result in the three separate ways discussed earlier.
The consumer advocates argue that we should read the term “parties” in section 636(c) to exclude absent class members to avoid a constitutional question about the authority of the district court to enter a judgment under Article III, but we disagree. “Courts do not use this tool when the text of the statute is unambiguous.” Price v. Time, Inc., 416 F.3d 1327, 1342 (11th Cir.2005). Based on the above authorities, the ordinary legal meaning of “parties” in 1979 is clear. And we will explain in the following subsection that section 636(c), as we read it, does not violate Article III of the Constitution in any event.
2. The Magistrate Judge Had Jurisdiction, Under Article III, to Enter a Final Judgment.
Article III, Section 1, of the Constitution requires that “[t]he judicial Power of the *1323 United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.” Judges of Article III courts “shall hold their Offices during good Behaviour” and “receive for their Services ... a Compensation[ ] [that] shall not be diminished.” U.S. Const. Art. Ill, § 1. The Supreme Court has identified two purposes served by this constitutional provision: first, Article III acts “to safeguard litigants’ right to have claims decided before judges who are free from potential domination by other branches of government,” Commodity Futures Trading Comm’n v. Schor, 478 U.S. 833, 848, 106 S.Ct. 3245, 3255, 92 L.Ed.2d 675 (1986) (citations and internal quotation marks omitted); and, second, Article III “serves ... to protect the role of the independent judiciary within the constitutional scheme of tripartite government,” Id. (citations and internal quotation marks omitted). We have explained that section 636(c) “is constitutional because the act requires that the parties and the district court consent to the transfer of the case to a magistrate and because the district court retains sufficient control over the magistrate.” Sinclair, 814 F.2d at 1519.
We divide our discussion of jurisdiction under Article III in three parts. First, we explain that section 636(c) is facially constitutional. Second, we explain that section 636(c) is constitutional as applied to class actions. Third, we explain that, because the argument about due process raised by the amicus curiae does not involve subject-matter jurisdiction, we will not consider it.
a. Section 636(c) Is Facially Constitutional.
The consumer advocates argue that section 636(c) facially violates Article III, but we held otherwise in Sinclair, 814 F.2d at 1519. “[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.” United States v. Joseph, 709 F.3d 1082, 1098-99 (11th Cir.2013) (quoting United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993)).
The consumer advocates suggest that the decision of the Supreme Court in Stern v. Marshall, 560 U.S. 474, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), abrogated our decision in Sinclair, but we disagree. In Stem, the Court held that, under Article III, a “Bankruptcy Court ... lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor’s proof of claim.” Id. at 2620. The Court explained that the entry of a judgment is an exercise of “the essential attributes of judicial power.” Id. at 2618. The Court rejected an argument that a bankruptcy judge could enter a judgment as an “adjunct” of a district court and explained that a bankruptcy judge entering a judgment subject to review by the district court only if a party appealed “can no more be deemed a mere ‘adjunct’ of the district court than a district court can be deemed such an ‘adjunct’ of the court of appeals.” Id. at 2619. And the Court explained that, when “the essential attributes of judicial power that are reserved to Article III courts” are exercised, “it does not matter who appointed the ... judge or authorized the judge to render final judgments in such proceedings.” Id. (citations and internal quotations omitted).
Stem did not abrogate our decision in Sinclair. In Sinclair, we concluded that section 636(c) was constitutional because “[a]t least nine other circuits” had reached that conclusion and “we f[ou]nd the reasoning of th[o]se cases persuasive.” Sinclair, 814 F.2d at 1519. Stem suggests that some of the factors cited in those *1324 decisions may not provide the district court sufficient control over magistrate judges to avoid a problem under Article III when a magistrate judge enters a judgment. For example, the decisions of our sister circuits relied on the authority of Article III judges over the selection and retention of magistrate judges and the ability to appeal to an Article III judge to support the constitutionality of section 636(c). See, e.g., Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc., 725 F.2d 537, 545-46 (9th Cir.1984). But these decisions also relied on other factors including the “authority to cancel an order of reference, sua sponte or on application of the parties, in individual cases” for good cause, that the Supreme Court did not address in Stem. Id. at 545. And, in Sinclair, we explained that the “district court [must] consent to the transfer of the case to a magistrate” under section 636(c). Sinclair, 814 F.2d at 1519. “[T]he doctrine of adherence to prior precedent ... mandates that the intervening Supreme Court case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel.” United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir.2009). Because Stem did not address many of the factors that led to our conclusion that section 636(c) is constitutional, Stem did not abrogate our decision in Sinclair.
b. Section 636(c), As Applied to Class Actions, Does Not Violate Article III.
The consumer advocates also argue that section 636(c) as applied to class actions violates Article III because it allows a magistrate judge to enter a judgment without the consent of the absent class members, but we agree with the Seventh Circuit that section 636(c) does not violate Article III as applied to class actions. Williams, 159 F.3d at 270. We have explained that one reason that “section 636(c) is constitutional [is] because the act requires that the parties ... consent to the transfer of the case to a magistrate,” Sinclair, 814 F.2d at 1519, and in a class action, the named party “is the ‘party’ to the lawsuit who acts on behalf of the entire class, including with regard to the decision to proceed before a magistrate judge,” Williams, 159 F.3d at 269. Because of the representation of the named party, absent class members do not have the same constitutional interest in the conduct of litigation as a named party. This conclusion is consistent with the explanation of the Supreme Court, in another context, that “the Due Process Clause ... does not afford [absent class members] as much protection from state-court jurisdiction as it does the [named party].” Shutts, 472 U.S. at 811, 105 S.Ct. at 2974.
Absent class members have sufficient tools to protect any interest that they have in litigating before an Article III judge. As we explained in the previous subsection, absent class members retain at least three options to protect their rights to the adjudication of their claims by an Article III judge when a class is certified and the named class member has consented to adjudication by a magistrate judge: (1) absent class members can apply to intervene in the lawsuit; (2) absent class members in many class actions can opt out of a settlement and not be bound by the judgment entered by a non-Article III judge, see Devlin, 536 U.S. at 10-11, 122 S.Ct. at 2011; and (3) absent class members can bring a collateral attack of the decision of the named class member to consent to the entry of a judgment by the magistrate judge, Williams, 159 F.3d at 269-70.
The consumer advocates argue that the magistrate judge in this case lacked jurisdiction to enter a judgment because Day lacked authority to bind absent class members when she consented to the jurisdic *1325 tion of the magistrate judge before the class had been certified, but we disagree. “[A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified.” Standard Fire Ins. Co. v. Knowles, — U.S. -, 133 S.Ct. 1345, 1349, 185 L.Ed.2d 439 (2013). The absent class members were not bound by the consent of Day. As we explained earlier, absent class members who objected to the jurisdiction of the magistrate judge could have “appl[ied] to the district court to intervene under Rule 24(a), become ... parties] to the lawsuit, and then exercise [their] right to withhold [their] consent to proceed before the magistrate judge.” Williams, 159 F.3d at 269. And the practice in at least some districts in our Circuit has been for a magistrate judge to draft a report and recommendation for the district court when a motion to intervene is filed because “a motion to intervene is a dispositive motion which must ultimately be decided by an Article III judge in the absence of consent.” Newman, 2010 WL 326069, at *1; see also Smith, 2010 WL 5483327, at *1 (“[T]he motion presently before the Court is a motion to intervene, which, because of its dispositive nature, cannot be decided by a magistrate judge absent the parties’ consent.”).
c. We Will Not Address the Argument of the Amicus Curiae About Due Process.
The consumer advocates argue that the notice to the absent class members violated their right to due process because it did not provide adequate notice that a magistrate judge would enter a final judgment, but we need not address this argument. “This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.” Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir.2004) (internal quotation marks omitted). We have explained that, if we were to address issues that had not been raised before the district court, “we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court.” Id. No party challenged in front of the magistrate judge the adequacy of the notice to the absent class members. Because the parties did not give the magistrate judge an opportunity to consider the adequacy of the notice, we need not consider this argument. Moreover, we will not allow an amicus curiae who asserts an argument on behalf of absent class members in a class action to attempt to “control the course of th[e] litigation to the extent of requesting individual relief not requested by anyone else.” Bing v. Roadway Express, Inc., 485 F.2d 441, 452 (5th Cir.1973).
The consumer advocates argue that we should address the due process argument because “[t]he failure of notice here concerns notice to the class members of their constitutional rights to an Article III judge, which appellees do not (and cannot) dispute presents a ‘jurisdictional question’ that should be raised sua sponte even when no one brings it to the court’s attention,” but we disagree. Whether the magistrate judge had jurisdiction to enter a final judgment under section 636(c) and Article III is a question of subject-matter jurisdiction. But the adequacy of the notice is not a question of subject-matter jurisdiction that we must raise sua sponte. The contents of the notice are relevant only to the question whether, if the consents of the absent class members are necessary, they impliedly consented to the jurisdiction of the magistrate judge under the decision of the Supreme Court in Roell v. Withrow, 538 U.S. 580, 123 S.Ct. 1696, 155 L.Ed.2d 775 (2003), which held that the consent of a party may be inferred *1326 from conduct during litigation in some circumstances, id. at 582, 123 S.Ct. at 1699. The contents or sufficiency of the notice are not relevant to any question about our subject-matter jurisdiction if absent class members were not required to consent to litigate before the magistrate judge.
The consumer advocates argue that, even if the argument about due process is not related to the jurisdiction of the magistrate judge under Article III and section 636(c), “the issue would still be jurisdictional,” but this argument is based on a misunderstanding of the distinction between personal and subject-matter jurisdiction. Our law is clear that “objections to personal jurisdiction—unlike subject matter jurisdiction—are waivable.” Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1218 n. 21 (11th Cir.2009). The consumer advocates cite the decisions of the Supreme Court in Shutts, and Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), as support for the argument that the sufficiency of the notice implicates a jurisdictional question that we must address, but both of these decisions addressed personal jurisdiction, Shutts, 472 U.S. at 814, 105 S.Ct. at 2976; Mullane, 339 U.S. at 313, 70 S.Ct. at 656. The Supreme Court has explained that, “[bjecause the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.” Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982). “[Ujnlike subject-matter jurisdiction, which even an appellate court may review sua sponte, ... a defense of lack of jurisdiction over the person ... is waived if not timely raised in the answer or a responsive pleading.” Id. at 704, 102 S.Ct. at 2105 (internal quotation marks omitted). We cannot address an argument of an amicus curiae based on a personal right of the unnamed class members that was not presented to the district court or in the brief of the appellant.

B. The Magistrate Judge Abused His Discretion When He Approved the Settlement Agreement.

“In order to approve the settlement agreement, the district court was required to determine that it was fair, adequate, reasonable, and not the product of collusion.” Leverso v. SouthTrust Bank of Ala., Nat’l Ass’n, 18 F.3d 1527, 1530 (11th Cir.1994). The magistrate judge recognized that we have identified the following six factors that a court should consider to decide whether a settlement agreement in a class action is fair:
(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.
Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir.1984). The key factor in this appeal is the third one: the range of possible recovery.
The magistrate judge approved a settlement that provided no monetary relief to the absent class members because he found that the defendants were not financially able to pay a meaningful award, but this finding is not supported by the record. The only evidence of the ability of the defendants to satisfy a judgment that was introduced at the fairness hearing concerned a single defendant, Persels & Associates. The day of the fairness hearing, the legal service defendants filed an affidavit in which Ruther averred that Persels & Associates had sustained nearly $6 million in losses during the calendar years of 2010 *1327 and 2011 and that Persels & Associates had an outstanding debt of $14 million from a previous settlement agreement. But this declaration establishes only that one of seven defendants would be unable to satisfy a significant judgment. The declaration does not prove that the other six defendants would be unable to satisfy a judgment or even address the ability of those six defendants to satisfy a judgment. There is no support in the record for the finding of the magistrate judge that the defendants would be unable to satisfy a judgment, and the magistrate judge abused his discretion when he made that finding.
This erroneous finding that the defendants would be unable to satisfy a substantial judgment was central to the decision of the magistrate judge that the settlement agreement was fair, adequate, and reasonable. The magistrate judge stated that one of three factors that persuaded him to approve the settlement agreement even though absent class members received no monetary relief was “the financial inability of the defendants to pay a meaningful award.” And the magistrate judge also relied on the finding that the defendants would be unable to satisfy a judgment to find that “the range of possible recovery,” Bennett, 737 F.2d at 986, was “from zero to a minimal recovery,” and to conclude that “the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable,” id., “includes no monetary recovery by the Class members.”
The magistrate judge abused his discretion when he approved the settlement based on a clearly erroneous factual finding. See Indigo Room, Inc. v. City of Fort Myers, 710 F.3d 1294, 1299 (11th Cir.2013). Although a court does not abuse its discretion when it makes a factual finding unless that finding was clearly erroneous, see id., a court commits a clear error when it makes a factual finding that has no support in the record, see United States v. Newman, 614 F.3d 1232, 1238-39 (11th Cir.2010).
CareOne argues that the record supports the finding that the other defendants would also be unable to satisfy a judgment, but we disagree. CareOne argues that it was unclear whether CareOne would remain a party to the litigation, the income and assets of Ruther & Associates are irrelevant because that firm was the predecessor of Persels & Associates, and the three individual defendants’ assets were protected from levy or execution because all of the individual defendants were married and held all of their assets jointly. But no one has argued or introduced any evidence to suggest that CareOne would be unable to satisfy a judgment. Although CareOne stated that it would appeal the denial of its motion to compel arbitration, at this point only speculation supports a finding that CareOne was likely to prevail. This speculation is not sufficient to support the exclusion of the assets of CareOne from “the range of possible recovery.” Bennett, 737 F.2d at 986. And the record does not support a finding that the three individual defendants would be unable to satisfy a judgment. Ruther averred that the three individual defendants could not satisfy a judgment because “all of [them] are married and [their] assets are held jointly with their spouses and are therefore protected from levy or execution,” but this statement was only based on his “best ... knowledge, understanding and belief.” The record contains no information about the financial condition of these three defendants other than the speculation of the managing partner of Persels & Associates. And even if we accepted CareOne’s argument as to all of these defendants, Car-eOne excludes one defendant: Legal Advice Line. Nothing in the record supports *1328 a finding that Legal Advice Line would be unable to satisfy a judgment.
Day argues that the magistrate judge did not abuse his discretion when he failed to consider whether defendants other than Persels & Associates would be able to satisfy a judgment “because all of the parties recognized that Persels & Associates would be primarily liable for any judgment under the amended complaint,” but we disagree. The imposition of primary liability on Persels & Associates would not prevent the imposition of secondary liability on the other defendants. Black’s Law Dictionary defines secondary liability as “[liability that does not arise unless the primarily liable party fails to honor its obligation.” Black’s Law Dictionary 998 (9th ed.2009). To be sure, Florida law provides that “[i]n a negligence action, the court shall enter judgment against each party liable on the basis of such party’s percentage of fault.” Fla. Stat. § 768.81(3). But Florida law would not have governed the claims of most of the nationwide class, and the amended complaint also included federal claims. The assets and income of the other defendants could still be used to satisfy a judgment because the defendants would be secondarily liable. See Weingart v. Allen & O’Hara, Inc., 654 F.2d 1096, 1106 (5th Cir.1981).
IV. CONCLUSION
We VACATE the final judgment that approved the settlement agreement and REMAND for further proceedings.

. Section 636(b)(1)(A) provides "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.”
Section 636(b)(1)(B) provides that “a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in [§ 636(b)(1)(A)], of applications for posttrial relief made by individuals convicted of criminal offenses and of *1335 prisoner petitions challenging conditions of confinement.”